IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00139-PAB-SBP

BKV BARNETT, LLC,

    Plaintiff,

v.

ELECTRIC DRILLING TECHNOLOGIES, LLC,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [Docket No. 17]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.    BACKGROUND**[1]

On August 20, 2021, plaintiff BKV Barnett, LLC ("BKV"), an oil and gas production company, and defendant Electric Drilling Technologies, LLC ("EDT"), a company that facilitates utility power supply for oil and gas drilling, entered into a Master Service Contract ("MSC"). Docket No. 9 at 3, ¶ 9; *see also* Docket No. 9-1; Docket No. 9-4 at 3-4, ¶¶ 16-17. The MSC states that BKV may, "from time to time," request that EDT "perform certain work or furnish certain services to [BKV] as specified in verbal requests or written work orders. . . . All Work Orders executed by the Parties pursuant to this Contract are expressly made subject to the terms of this Contract." Docket No.

---

[1] The following facts are taken from plaintiff's amended complaint, Docket No. 9, and are presumed to be true for the purpose of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

9-1 at 1, ¶ 1.1. The MSC and all causes of action arising from the contract are governed by the law of Colorado. *Id*. at 11, ¶ 14.1.

The MSC defines BKV as the "Company" and EDT as the "Contractor." *Id*. at 1. The MSC contains several indemnity provisions. *See id*. at 4-5, ¶¶ 4.1-4.4. The relevant indemnity provision for this dispute provides that

> Contractor agrees to indemnify, defend, release, protect and save harmless Company Group[2] from and against any and all losses, causes of action, claims . . . made or asserted by, or arising in favor of, any member of Contractor Group[3] . . . . expressly including any claims actually or allegedly caused by . . . the sole, concurrent, or partial negligence (of whatever nature or character), fault, or strict liability of any member of Company Group. . . ; provided, however, that the foregoing obligations of Contractor to indemnify, defend, and save Company Group harmless shall not apply to the extent that any such claims are caused by,

---

[2] The MSC defines "Company Group" as the

(i) Company and its parent, subsidiaries, affiliated, and related companies, its partners, co-lessees and non-operating working interest owners and the directors, officers, partners, owners, members, managers, agents, representatives, employees, and invitees of any one or more of the persons or entities named or described above, and (ii) the contractors (and their subcontractors of any tier) of Company and its parent, subsidiaries, affiliated, and related companies, and the employees, agents, representatives, and invitees of such contractors and subcontractors; provided, however, that the term "Company Group" shall not include any member of "Contractor Group."

Docket No. 9-1 at 3, ¶ 3.2.

[3] The MSC defines "Contractor Group" as the

(i) Contractor and its parent, subsidiary, affiliated, and related companies, and the directors, officers, partners, members, managers, agents, representatives, employees, consultants and invitees of any one or more of the persons or entities named or described above, and (ii) the contractors (and their subcontractors of any tier) of Contractor and its subsidiary, affiliated, and related companies, and the employees, consultants, officers, managers, agents, representatives, and invitees of such contractors and subcontractors.

Docket No. 9-1 at 3, ¶ 3.2.

2

> result from, or arise out of or from the gross negligence or willful misconduct of any member of Company Group.

*Id*. at 4, ¶ 4.1 (emphasis omitted; footnotes added).

BKV operates a gas drilling site in Justin, Texas. Docket No. 9 at 5, ¶ 15. Electrical facilities – located at 4100 Wakefield Road, Justin, Texas – provide electrical power to equipment on BKV's rig site. *Id*. In early 2022, the electrical facilities were struck by lightning. *Id*. The lightning strike "damaged certain equipment used to supply power to BKV Barnett's rig equipment." *Id*.

BKV "contracted with EDT to repair the damages caused by the lightning strike." *Id*., ¶ 16. EDT sub-contracted with Turn Key Electrical ("Turn Key") to provide some or all of the necessary repairs. *Id*. On March 31, 2022, BKV received written notice of potential personal injury claims from Matthew Lara, an employee of Turn Key, related to an incident that occurred at the electrical facility on March 22, 2022. *Id*., ¶¶ 16-17 (citing Docket No. 9-2). Mr. Lara alleged that he was "severely burned and shocked" when reconnecting wires at the site. Docket No. 9-4 at 4, ¶ 24. On June 16, 2022, Mr. Lara filed a lawsuit in Dallas County, Texas (the "Lara Lawsuit"), Case No. CC-22-03168-A, against BKV, EDT, and several other parties related to the March 22, 2022 incident. Docket No. 9 at 1-2, 5-6, ¶¶ 1, 19; Docket No. 9-4. Mr. Lara asserts claims for negligence and gross negligence against BKV and EDT. Docket No. 9-4 at 6-7, ¶¶ 33-38.

On June 23, 2022, BKV sent written correspondence to EDT requesting defense and indemnity for Mr. Lara's claims and demanded that EDT acknowledge it owes BKV additional insurance coverage under EDT's policies. Docket No. 9 at 5-6, ¶ 19 (citing Docket No. 9-5). EDT has not responded to the demand letter. *Id*. at 6, ¶ 20.

3

BKV asserts three claims against EDT in the amended complaint.  First, BKV asserts a claim for declaratory judgment under 28 U.S.C. § 2201, requesting that the Court declare that the MSC contains enforceable defense, indemnity, and insurance provisions requiring EDT to defend and indemnify BKV from all claims in the Lara Lawsuit and grant BKV additional insured status for claims in the Lara Lawsuit.  *Id*. at 1, 6-7.  Second, BKV asserts a claim for breach of contract, alleging that EDT breached the MSC by failing to honor its contractual obligations for defense, indemnity, and additional insurance coverage.  *Id*. at 8.  EDT's third claim "seeks recovery of its attorneys' fees and litigation costs and expenses."  *Id*., ¶ 30.[4]

On March 22, 2023, EDT filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 17.  On April 12, 2023, BKV filed a response.  Docket No. 18.  On April 26, 2023, EDT filed a reply.  Docket No. 19.[5]

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken*

---

[4] EDT's third claim does not appear to be a separate claim, but rather outlines some of EDT's requested relief.

[5] On May 25, 2023, BKV filed a motion requesting leave to file a sur-reply to respond to three new arguments in EDT's reply.  Docket No. 29.  The Court does not rely on these arguments in its ruling and therefore will deny BKV's motion as moot.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) ("a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief.").

*Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III. ANALYSIS

EDT asserts that the Court should dismiss this action for two reasons.  First, EDT argues that the MSC's indemnification provisions are void under Colo. Rev. Stat.

§ 13-21-111.5(6).  Docket No. 17 at 8-10.  Second, EDT argues that BKV's declaratory judgment claim is "premature" because the Court cannot determine whether EDT has a duty to defend or indemnify BKV until factual issues are decided in the Lara Lawsuit.  *Id*. at 6-8, 10.

### A. Documents Outside the Pleadings

As an initial matter, BKV requests that the Court consider several documents outside the pleadings in ruling on the motion to dismiss.  *See* Docket No. 18 at 3-4.  Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the

6

truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

First, BKV requests that the Court consider a declaration from Maureen Carroll and a letter from EDT's insurer to Turn Key.  See Docket No. 18 at 3-4 (citing Docket Nos. 18-1, 18-2).  The amended complaint does not reference a declaration from Ms. Carroll or a letter from EDT's insurer to Turn Key.  Accordingly, the Court will not consider the declaration or letter in ruling on the motion to dismiss.  See *Waller*, 932 F.3d at 1282-83 (noting that Tenth Circuit precedent clearly states that the exception only applies to "documents referred to in the complaint").

Second, BKV requests that the Court consider EDT's interrogatory responses in the Lara Lawsuit.  Docket No. 18 at 4 (citing Docket No. 18-3).  BKV references the interrogatory responses to demonstrate that Mr. Lara was a member of the Contractor Group.  See *id*.  Because BKV is introducing the interrogatory responses to prove the truth of the matter asserted therein, the Court declines to consider this exhibit.  See *Tal*, 453 F.3d at 1264 n.24.

### B. Colo. Rev. Stat. § 13-21-111.5(6)

EDT argues that the Court should dismiss BKV's claims because the MSC's indemnification provisions are void under Colo. Rev. Stat. § 13-21-111.5(6).  Docket No. 17 at 8-10.  Colorado's Anti-Indemnity Statute provides that

> any provision in a construction agreement that requires a person to indemnify, insure, or defend in litigation another person against liability for damage arising out of death or bodily injury to persons or damage to property caused by the negligence or fault of the indemnitee or any third party under the control or supervision of the indemnitee is void as against public policy and unenforceable.

Colo. Rev. Stat. § 13-21-111.5(6)(b).  In adopting this statute, the Colorado General Assembly found that "[c]onstruction businesses in recent years have begun to use contract provisions to shift the financial responsibility for their negligence to others, thereby circumventing the intent of tort law."  Colo. Rev. Stat. § 13-21-111.5(6)(a)(III); *see also Higby Crane Servs., LLC v. Nat'l Helium, LLC*, 703 F. App'x 687, 691 (10th Cir. 2017) (unpublished).  The purpose of the Anti-Indemnification Statute is to "create an economic climate that will promote safety in construction, foster the availability and affordability of insurance, and ensure fairness among businesses."  Colo. Rev. Stat. § 13-21-111.5(6)(a)(VI).  The statute defines a "construction agreement" as

> a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.

Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).[6]

EDT argues that the MSC's indemnification provisions are void under Colo. Rev. Stat. § 13-21-111.5(6) because the MSC and accompanying work order are a construction agreement.  Docket No. 17 at 8-10.  EDT asserts that BKV is an "an oil and gas production company operating a gas drilling site near Justin, Texas."  *Id*. at 9.  EDT argues that the complaint "concedes that the contract between the parties required EDT to repair facilities at its gas drilling rig – the identical situation the *Higby* Court determined constituted a construction contract."  *Id*. at 9-10 (citing *Higby Crane Servs.*,

---

[6] A "construction agreement" does not include any rental agreement between a landlord and tenant or any agreement that concerns property owned or operated by a railroad, sanitation district, or water district.  Colo. Rev. Stat. §§ 13-21-111.5(6)(e)(II)(A)-(B).

8

703 F. App'x at 693). EDT argues that, because the indemnification provisions are void, BKV has failed to state a claim for declaratory judgment, breach of contract, or attorneys' fees. *Id*. at 10.

BKV responds that the MSC is not a "construction contract" under Colo. Rev. Stat. § 13-21-111.5(6)(e)(I). Docket No. 18 at 8. BKV argues that the "site at issue is not a gas distribution plant." *Id*. at 9.[7] BKV contends that the Court cannot properly evaluate whether the indemnity provisions are void at the motion to dismiss stage because determining whether the MSC is a construction agreement requires "an extensive factual analysis." *Id*. at 11.

At the motion to dismiss stage, the Court finds that the MSC is not a construction agreement as defined in Colo. Rev. Stat. § 13-21-111.5(6)(e)(I). The MSC states that BKV may request that EDT "perform certain work or furnish certain services to [BKV] as specified in verbal requests or written work orders . . . . All Work Orders executed by the Parties pursuant to this Contract are expressly made subject to the terms of this Contract." Docket No. 9-1 at 1, ¶ 1.1. EDT did not agree to perform any specific work for BKV in the MSC. *See id*. The amended complaint alleges that, in early 2022, a lightning strike "damaged certain equipment used to supply power to BKV Barnett's rig equipment." Docket No. 9 at 5, ¶ 15. BKV "contracted with EDT to repair the damages caused by the lightning strike." *Id*., ¶ 16. Neither party provided a copy of the relevant work order. The allegations in the amended complaint indicate only that BKV

---

[7] Citing Ms. Carroll's declaration, BKV asserts that the site was "an oil and gas wellsite" in the "drilling phase of operations." Docket No. 18 at 9 (citing Docket No. 18-1 at 2, ¶ 5). However, as discussed previously, the Court will not consider Ms. Carroll's declaration in ruling on the motion to dismiss. The Court therefore declines to consider this factual argument.

contracted with EDT to "repair" certain "equipment."  *Id*., ¶¶ 15-16.  A "construction agreement" under the statute includes an agreement for the "repair" of "any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system."  Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).  However, the repair of "equipment" is not included in the statutory definition.  The amended complaint provides no indication that BKV contracted with EDT to repair a building, structure, gas or other distribution system.  Accordingly, at this stage, the Court cannot conclude that the MSC is a construction agreement as defined in Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).  The Court therefore rejects EDT's first argument that the indemnification provisions are void.

### C. Declaratory Judgment Claim

"Because declaratory judgment acts are procedural rules, 'federal law determines whether a district court may properly enter a declaratory judgment' in a diversity case." *TBL Collectibles, Inc. v. Owners Ins. Co*., 285 F. Supp. 3d 1170, 1194 (D. Colo. 2018) (quoting *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. 2008)).  The federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201. "[T]he question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

The Tenth Circuit has identified five factors ("*Mhoon* factors") a district court should consider in determining whether to exercise its discretion to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id*. at 1169 (quoting *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). "Courts in this district have additionally looked to a sixth factor set forth in *Constitution Associates v. New Hampshire Insurance Co*., 930 P.2d 556 (Colo. 1997)— whether the declaratory judgment action is 'independent of and separable from the underlying action.'" *TBL Collectibles, Inc*., 285 F. Supp. 3d at 1195 (quoting *Constitution Assocs*., 930 P.2d at 561) (collecting cases). Courts have "typically applied the factors listed above to decline jurisdiction over declaratory judgment claims where there is parallel litigation in state and federal courts, or where resolution of the declaratory judgment claim would prejudice an insured in an underlying liability action by a third party." *Id*. (collecting cases).

EDT argues that BKV's declaratory judgment claim is "premature" because the Court cannot determine whether EDT has a duty to defend or indemnify BKV until factual issues are decided in the Lara Lawsuit. Docket No. 17 at 6-8, 10. EDT notes that the Lara Lawsuit contains a claim for gross negligence against BKV and that the MSC expressly exempts EDT from defending and indemnifying BKV for claims that arise from BKV's gross negligence. *Id*. at 7. Furthermore, EDT argues that BKV's

declaratory judgment claim is not "independent and separable from the underlying action" because a declaratory judgment would prejudice EDT's defense of claims in the underlying Lara Lawsuit. *Id*. at 7-8 (quoting *Constitution Assocs*., 930 P.2d at 562-63). EDT asserts that "a declaration by this Court that EDT owes either defense or indemnity to BKV would necessarily require a determination that BKV was, or was not, . . . grossly negligent." *Id*. at 8. EDT does not directly address the *Mhoon* factors in its motion.

BKV responds that EDT's duty to defend is not premature because it was triggered by Mr. Lara's notice of claims and the facts in the Lara Lawsuit complaint. Docket No. 18 at 7. BKV argues that a contractor's duty to defend arises "when the injured party alleges facts potentially triggering the obligation to indemnify." *Id*. at 6 (citing *Lafarge N. Am., Inc. v. K.E.C.I. Colo., Inc*., 250 P.3d 682, 688 (Colo. App. 2010); *Am. Fam. Mut. Ins. Co. v. Teamcorp, Inc*., No. 07-cv-00200-PSF-MJW, 2007 WL 3024446, at *2 (D. Colo. Oct. 16, 2007)). BKV states that the plain language of the MSC reveals that EDT's duty to defend "arises when a claim is simply made" alleging BKV's negligence and, here, the Lara Lawsuit complaint alleges that Mr. Lara's injuries were caused by the negligence of BKV and EDT. *Id*. at 7. BKV argues that once EDT's duty to defend has been triggered, EDT is required to defend all claims in the lawsuit. *Id*. Regarding the *Mhoon* factors, BKV contends that all five factors support exercising discretion over the declaratory judgment action. *Id*. at 14. BKV asserts that this declaratory action would clarify the parties' legal rights and obligations under the MSC and settle the controversy between BKV and EDT; the declaratory action involves

independent issues and does not provide a race to *res judicata*; and there is no alternative remedy that is better than this declaratory judgment claim.  *Id*. at 14-16.[8]

The Court will consider each *Mhoon* factor in determining whether to exercise its discretion to hear BKV's declaratory judgment claim.

### 1) Whether the Declaratory Action Would Settle the Controversy and Serve a Useful Purpose in Clarifying the Legal Relations at Issue

BKV's claim for declaratory judgment requests that the Court declare:

a. The Master Service Contract is a valid and enforceable agreement;

b. BKV Barnett is a legal beneficiary of the terms of the Master Service Contract;

c. EDT is bound by the terms of the Master Service Agreement;

d. BKV Barnett and all affiliated entities have materially complied with all its obligations under the Master Service Contract;

e. The Master Service Contract contains valid, enforceable defense provisions requiring EDT to defend BKV Barnett and all members of Company Group from all claims asserted by Lara in the Lara Lawsuit;

f. The Master Service Contract contains valid, enforceable indemnity provisions requiring EDT to indemnify BKV Barnett and all members of Company Group from all claims asserted by Lara in the Lara Lawsuit;

g. The Master Service Contract contains valid, enforceable insurance provisions requiring EDT to obtain and maintain certain minimum insurance limits for the benefit of BKV Barnett and all members of Company Group;

---

[8] BKV also asserts that EDT's reliance on the "independent and separable" factor in *Constitution Assocs*. is misplaced because Colorado law does not govern this federal declaratory judgment claim.  Docket No. 18 at 12-13.  The Court rejects BKV's argument because courts in this district have utilized the *Constitution Assocs.* factor when analyzing declaratory judgment claims under 28 U.S.C. § 2201.  *See TBL Collectibles, Inc.*, 285 F. Supp. 3d at 1195 (collecting cases); *see also Addison Ins. Co. v. Rippy*, No. 08-cv-00237-PAB-MJW, 2009 WL 723322, at *6 (D. Colo. Mar. 18, 2009) (considering the *Constitution Assocs.* factor instructive when analyzing the fourth *Mhoon* factor).

> h. The valid, enforceable insurance provisions in the Master Service Contract require EDT's insurer(s) to grant BKV Barnett and all members of Company Group additional insured status relating to the claims asserted against BKV Barnett and all members of the Company Group in the Lara Lawsuit; and
>
> i. EDT has breached the Master Service Contract by failing to defend, indemnify, and grant additional insured status to BKV Barnett and all members of the Company Group involved in the Lara Lawsuit.

Docket No. 9 at 9-10. BKV's declaratory judgment claim asks for a declaration of the rights and duties of the parties arising out of the MSC. *See id*. A declaration by this Court would determine whether EDT has a duty to defend or indemnify BKV for the claims asserted in the Lara Lawsuit. The Court finds that a declaratory action would settle the controversy between the parties and clarify the parties' legal relations at issue in this case and therefore the first and second *Mhoon* factors weigh in favor of exercising jurisdiction over this claim. *See Addison*, 2009 WL 723322, at *5 (finding that the first two *Mhoon* factors weighed in favor of jurisdiction because a declaratory action would determine whether defendant was required to defend and indemnify the plaintiffs in a state court case); *Owners Ins. Co. v. Keeton*, No. 20-cv-02950-KLM, 2021 WL 5998526, at *5 (D. Colo. Dec. 20, 2021) ("The crux of the dispute between the parties is whether [defendant's] insurance coverage imposes a duty on Plaintiff to defend and indemnify. Such a dispute deals squarely with legal relations, and the Court's adjudication will necessarily clarify the obligations owed by Plaintiff.").

### 2) *Whether the Declaratory Remedy Is Being Used Merely for the Purpose of "Procedural Fencing" or "To Provide an Arena for a Race to Res Judicata"*

EDT offers no evidence that the declaratory action is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*." *See*

*Runyon*, 53 F.3d at 1169.  This case involves the interpretation of a contract, while the Lara Lawsuit involves claims for negligence and gross negligence.  As a result, the Court finds that the third *Mhoon* factor weighs in favor of exercising jurisdiction.  *See Teamcorp*, 2007 WL 3024446, at *2.

### 3) Whether Use of a Declaratory Action Would Increase Friction Between the Federal and State Courts and Improperly Encroach upon State Jurisdiction

"The limitation that the fourth *Mhoon* factor places on the federal inquiry is that the federal action may not unduly interfere with the underlying state court action." *Addison*, 2009 WL 723322, at *5.  In analyzing whether there is undue interference in the state court action, "a federal district court should consider whether it will be asked to resolve factual disputes that are material to the ongoing state proceedings."  *Id.* at *6.  "Under *Mhoon*, a federal district court should stay or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action."  *Id.*

Here, Mr. Lara asserts claims against BKV and EDT for both negligence and gross negligence.  Docket No. 9-4 at 6-7, ¶¶ 33-38.  The MSC requires EDT to "indemnify" and "defend" BKV against claims asserted by "any member of Contractor Group," including "claims actually or allegedly caused by" the negligence of BKV.  Docket No. 9-1 at 4, ¶ 4.1.  However, "the foregoing obligations of [EDT] to indemnify, defend, and save Company Group harmless shall not apply to the extent that any such claims are caused by, result from, or arise out of or from the gross negligence or willful misconduct" of BKV.  *Id*.  Mr. Lara is a member of the Contractor Group because Turn Key was EDT's subcontractor and Mr. Lara was an employee of Turn Key.  *See* Docket

No. 9 at 5, ¶ 16; Docket No. 9-1 at 3, ¶ 3.2 (defining "Contractor Group" as including the subcontractors of EDT and the "employees . . . of such contractors and subcontractors").

In Colorado, the "duty to defend is triggered more easily than is the duty to indemnify.  Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm." *Constitution Assocs.*, 930 P.2d at 563 (citing *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991)); *see also Teamcorp*, 2007 WL 3024446, at *2; *Lafarge N. Am., Inc.*, 250 P.3d at 688 (noting that defendant's "duty to defend was triggered so long as the injured party alleged facts even potentially triggering the obligation to indemnify.  The injured party's complaint did so, specifically alleging that both [plaintiff] and [defendant] were negligent." (citations omitted)).  Furthermore, the "duty to defend encompasses any potential claims raised by the facts." *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

The declaratory judgment claim asks for a declaration of the rights and duties of the parties under the MSC.  BKV's arguments presume that, in the course of interpreting the MSC, the Court would be deciding fact issues in the Lara Lawsuit.  *See* Docket No. 17 at 6-8.  The Court, however, will not make any factual findings regarding the parties' alleged negligence that occurred during the March 22, 2022 incident.  The declaratory judgment claim simply asks the Court to interpret the MSC.  Accordingly, the Court does not foresee that this declaratory judgment action will improperly encroach

16

upon the state court litigation.[9]  If, at some point in this case, either party believes that a stay is appropriate until the Lara Lawsuit is resolved, either party may file a motion to that effect.  *See Teamcorp*, 2007 WL 3024446, at *2.  At this stage, the Court finds that the fourth *Mhoon* factor weighs in favor of exercising jurisdiction over BKV's declaratory judgment claim.  *See Runyon*, 53 F.3d at 1169.

### 4) Whether there is an Alternative Remedy Which is Better or More Effective

The fifth *Mhoon* factor often "focuses on whether the parties could adjudicate the issue in the underlying action."  *Addison*, 2009 WL 723322, at *7 (citations omitted).  EDT offers no evidence that the parties could adjudicate the interpretation of the MSC in the Lara Lawsuit.  In fact, the MSC provides that state and federal courts located in Denver, Colorado have "exclusive jurisdiction" over claims or disputes arising out of the MSC.  Docket No. 9-1 at 11, ¶ 14.1.  Accordingly, the Court finds that the fifth *Mhoon* factor weighs in favor of exercising jurisdiction because there is not an alternative remedy which is more effective than the present action.  *See Teamcorp*, 2007 WL 3024446, at *2.

As a result, the Court will exercise jurisdiction over BKV's declaratory judgment claim.  The Court therefore denies this portion of defendant's motion.[10]

---

[9] Furthermore, under the *Constitution Assocs.* factor, BKV's declaratory judgment claim appears to be "independent of and separable from" the Lara Lawsuit.  *See Const. Assocs.*, 930 P.2d at 562.  A declaratory judgment action is not "independent and separable" if it could "unduly prejudice [a party] in the underlying action."  *Id*.  Here, EDT has identified no prejudice that it would suffer in the Lara Lawsuit if the Court ruled that EDT was required to defend BKV in the Lara Lawsuit.

[10] EDT broadly states that all claims should be dismissed as "premature."  Docket No. 17 at 2.  However, in its motion, EDT does not discuss why the Court should dismiss BKV's breach of contract claim, nor does it identify the breach of contract elements that BKV failed to allege in the amended complaint.  *See* Practice Standards

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [Docket No. 17] is **DENIED**. It is further

**ORDERED** that Plaintiff BKV Barnett, LLC's Motion for Leave to File Surreply to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 29] is **DENIED as moot**.

DATED February 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

(Civil Cases), Chief Judge Philip A. Brimmer, § III.F.2.a.i. ("For Rule 12(b) motions, the following format should be used: i. For each claim for relief that the movant seeks to dismiss pursuant to Rule 12(b)(6), clearly enumerate each element **that movant contends must be alleged, but was not**."). In its reply, EDT argues for the first time that BKV cannot state a claim for breach of contract because it cannot plausibly allege the existence of a duty to defend or indemnify. Docket No. 19 at 8. "[A] party waives issues and arguments raised for the first time in a reply brief." *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)). Accordingly, the Court denies EDT's request to dismiss the breach of contract claim.

18