IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00139-PAB-SBP

BKV BARNETT, LLC,

    Plaintiff,

v.

ELECTRIC DRILLING TECHNOLOGIES, LLC,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on Plaintiff BKV Barnett, LLC's Motion for Summary Judgment [Docket No. 40]. Defendant Electric Drilling Technologies, LLC ("EDT") filed a response. Docket No. 41. Plaintiff BKV Barnett, LLC ("BKV") filed a reply. Docket No. 42. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.   BACKGROUND**[1]

BKV operates an onshore oil and gas lease wellsite in Justin, Texas (the "Site"). Docket No. 40 at 3, ¶ 4. EDT provided various services and rental equipment to supply electrical power to the Site, including powerlines, power poles, and other electrical equipment. *Id*., ¶ 5. On August 20, 2021, BKV and EDT entered into a Master Service Contract ("MSC"). *Id*., ¶ 2; *see also* Docket No. 40-1 at 8-30. The MSC states that BKV may, "from time to time," request that EDT "perform certain work or furnish certain services to [BKV] as specified in verbal requests or written work orders. . . . All Work

---

[1] The following facts are undisputed unless otherwise indicated.

Orders executed by the Parties pursuant to this Contract are expressly made subject to the terms of this Contract." Docket No. 40-1 at 8, ¶ 1.1.[2] The MSC and all causes of action arising from the contract are governed by the law of Colorado. *Id*. at 18, ¶ 14.1.[3]

The MSC defines BKV as the "Company" and EDT as the "Contractor." Docket No. 40 at 3, ¶ 3. The MSC defines the "Company Group" as

> (i) Company and its parent, subsidiaries, affiliated, and related companies, its partners, co-lessees and non-operating working interest owners and the directors, officers, partners, owners, members, managers, agents, representatives, employees, and invitees of any one or more of the persons or entities named or described above, and (ii) the contractors (and their subcontractors of any tier) of Company and its parent, subsidiaries, affiliated, and related companies, and the employees, agents, representatives, and invitees of such contractors and subcontractors; provided, however, that the term "Company Group" shall not include any member of "Contractor Group."

*Id*. at 5, ¶ 13. The MSC defines the "Contractor Group" as

> (i) Contractor and its parent, subsidiary, affiliated, and related companies, and the directors, officers, partners, members, managers, agents, representatives, employees, consultants and invitees of any one or more of the persons or entities named or described above, and (ii) the contractors (and their subcontractors of any tier) of Contractor and its subsidiary, affiliated, and related companies, and the employees, consultants, officers, managers, agents, representatives, and invitees of such contractors and subcontractors.

*Id*.

The MSC contains insurance, defense, and indemnification provisions. *Id*. at 4-7, ¶¶ 13-14. The MSC contains the following defense and indemnification obligations of EDT:

---

[2] This fact is not included in plaintiff's statement of undisputed facts. However, the parties do not dispute the authenticity of plaintiff's exhibit containing the MSC. Accordingly, the Court deems this fact undisputed.

[3] This fact is not included in plaintiff's statement of undisputed facts. However, the parties do not dispute the authenticity of plaintiff's exhibit containing the MSC. Accordingly, the Court deems this fact undisputed.

### 4. INDEMNITY

4.1     <u>CONTRACTOR</u> AGREES TO INDEMNIFY, DEFEND, RELEASE, PROTECT AND SAVE HARMLESS <u>COMPANY GROUP</u> FROM AND AGAINST ANY AND ALL LOSSES, CAUSES OF ACTION, CLAIMS, DEMANDS, ALLEGATIONS, JUDGMENTS, DEFENSE COSTS, OR SUITS INCLUDING, BUT NOT LIMITED TO, CLAIMS, DEMANDS, JUDGMENTS OR SUITS FOR PROPERTY DAMAGE, BODILY INJURY, ILLNESS, DISEASE, DEATH, LOSS OF SERVICES OR WAGES, OR FOR LOSS OF CONSORTIUM OR SOCIETY (ALL OF THE FOREGOING, COLLECTIVELY, "<u>CLAIMS</u>") MADE OR ASSERTED BY, OR ARISING IN FAVOR OF, ANY MEMBER OF <u>CONTRACTOR GROUP</u> (OR THEIR SPOUSES, RELATIVES, DEPENDENTS, OR ANY LEGAL REPRESENTATIVES), OR BASED ON OR ARISING OUT OF SUCH CLAIMS, IN ANY WAY, DIRECTLY OR INDIRECTLY, ARISING OUT OF OR RELATED TO THE PERFORMANCE OF THIS <u>CONTRACT</u> OR THE USE BY ANY MEMBER OF <u>COMPANY GROUP</u> OR <u>CONTRACTOR GROUP</u> OF, OR THEIR PRESENCE ON, ANY PREMISES OR FACILITIES OWNED, OPERATED, CHARTERED, OR CONTROLLED BY <u>COMPANY GROUP</u> OR <u>CONTRACTOR GROUP</u> OR USED FOR TRANSPORTATION (INCLUDING, BUT NOT LIMITED TO, ANY STRUCTURE, PLATFORM, AIRCRAFT, VESSEL, OR OTHER PREMISES) OR FOR INGRESS AND EGRESS BY <u>COMPANY GROUP</u> OR <u>CONTRACTOR GROUP</u>, EXPRESSLY INCLUDING ANY <u>CLAIMS</u> ACTUALLY OR ALLEGEDLY CAUSED BY THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF VESSELS OR CRAFT, OR THE SOLE, CONCURRENT, OR PARTIAL NEGLIGENCE (OF WHATEVER NATURE OR CHARACTER), FAULT, OR STRICT LIABILITY OF ANY MEMBER OF <u>COMPANY GROUP</u>, AND WHETHER OR NOT SUCH NEGLIGENCE, FAULT, STRICT LIABILITY, UNSEAWORTHINESS, OR UNAIRWORTHINESS PREDATES THE DATE OF EXECUTION OF THIS <u>CONTRACT</u>; PROVIDED, HOWEVER, THAT THE FOREGOING OBLIGATIONS OF <u>CONTRACTOR</u> TO INDEMNIFY, DEFEND, AND SAVE <u>COMPANY GROUP</u> HARMLESS SHALL NOT APPLY TO THE EXTENT THAT ANY SUCH <u>CLAIMS</u> ARE CAUSED BY, RESULT FROM, OR ARISE OUT OF OR FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF <u>COMPANY GROUP</u>.

*Id*. at 6, ¶ 14.  The MSC provides that the

> indemnitee shall promptly notify the indemnitor in writing of any claim, event or fact that may give rise to a claim by the indemnitee against the indemnitor based on this Contract.  The notice shall state the nature and basis of the claim, event or fact and the amount, to the extent known.  The obligations set forth in this article 4 shall survive even if reasonably prompt notice of any claim is not

3

provided so long as the failure to provide prompt notice does not materially prejudice the party to whom notice is owed.

*Id*. at 7, ¶ 14.

The MSC's insurance provisions provide that the

[p]arties agree to procure and maintain, at their sole expense, with solvent insurance companies eligible to do business in the state where Services are to be performed and rated by A.M. Best Company A-VI or higher or with underwriters at Lloyds of London or the Member Companies of the Institute of London Underwriters, policies of insurance with not less than the coverages and amounts outlined in Exhibit B attached hereto and made a part hereof.

*Id*. at 4-5, ¶ 13.  Furthermore, "all insurance policies and coverage acquired by the Parties shall extend to and protect the other respective Company Group or Contractor Group to the fullest extent."  *Id*. at 7, ¶ 14.

In early 2022, a lightning strike damaged certain electrical facilities that provided electrical power at or near the Site, resulting in the Site losing power.  *Id*. at 3, ¶ 6.  EDT notified BKV of the power outage, and EDT agreed that it would dispatch a crew to rectify the issue.  *Id*. at 4, ¶ 7.  EDT hired Turn Key Utility Construction Inc. ("Turn Key") to perform the work on the damaged equipment to restore electrical power to the Site.  *Id*., ¶ 8.  On March 22, 2022, Turn Key sent its crew, including Matthew Lara, to work on restoring power to the Site.  *Id*., ¶ 9.  Mr. Lara alleges that, in the course of his work, an arc flash occurred, causing him burns and other physical injuries (the "Incident").  *Id*., ¶ 10.

On March 24, 2022, EDT billed an invoice to BKV for $31,050 (the "March 2022 Invoice").  Docket No. 40-5.[4]  The March 2022 Invoice shows that EDT performed the

---

[4] The facts in this paragraph are not included in plaintiff's statement of undisputed facts.  However, plaintiff attaches the March 2022 Invoice in support of its statement that, "[p]ursuant to the MSC, EDT provided various services and rental

4

following work in March 2022: (a) "install[ed]" a "Utility Pole," "overhead wires," "[a]bove ground cable," and "drive-overs;" (b) "set 2 pad mounted switches;" and (c) "repair[ed] overhead cable."  *Id*.  EDT also provided a "Crane to Load and Unload standard load items."  *Id*.

In late March 2022, BKV received written notice of potential personal injury claims from Mr. Lara related to the Incident.  Docket No. 40 at 7, ¶ 15.  On June 3, 2022, BKV sent correspondence to EDT requesting defense, indemnity, and additional insured coverage in connection with Mr. Lara's claims.  *Id*., ¶ 16.  Mr. Lara subsequently filed a lawsuit related to the Incident in Dallas County, Texas (the "Lara Lawsuit"), Case No. CC-22-03168-A, against BKV, EDT, Denton County Electric Cooperative, doing business as CoServ Electric ("CoServ"), and other entities.  *Id*. at 4, ¶ 11.  Mr. Lara alleges that his injuries were caused by BKV's and EDT's negligence and gross negligence.  *Id*., ¶ 12.

On June 23, 2022, BKV sent written correspondence requesting that EDT acknowledge its obligations to provide BKV with defense, indemnity, and additional insurance coverage in the Lara Lawsuit.  *Id*. at 7-8, ¶ 17.  On September 27, 2022, CoServ sent correspondence to BKV demanding it provide defense and indemnity to

---

equipment (i.e., powerlines, power poles, and other electrical equipment) to supply electrical power to the Site."  Docket No. 40 at 3, ¶ 5 & n.5.  Defendant quotes many of the details of the March 2022 Invoice in its response to the summary judgment motion.  Docket No. 41 at 11.  Despite EDT relying on facts from the March 2022 Invoice in support of its argument that the parties' agreement was a "construction agreement" under Colorado law, *see* Docket No. 41 at 9-11, BKV does not dispute the accuracy of such facts in its reply brief.  *See* Docket No. 42 at 8-9.  The Court finds that the parties do not dispute the authenticity or the content of the March 2022 Invoice.  Accordingly, the Court deems the facts in this paragraph undisputed.  *See* Fed. R. Civ. P. 56(c)(3) (noting that, at the summary judgment stage, the "court need consider only the cited materials, but it may consider other materials in the record").

5

CoServ for claims asserted against it in the Lara Lawsuit.  *Id*. at 8, ¶ 18.  BKV forwarded CoServ's demand to EDT.  *Id*., ¶ 19.

BKV asserts three claims against EDT in the amended complaint.  First, BKV asserts a claim for declaratory judgment under 28 U.S.C. § 2201, requesting that the Court declare that the MSC contains enforceable defense, indemnity, and insurance provisions requiring EDT to defend and indemnify BKV from all claims in the Lara Lawsuit and grant BKV additional insured status for claims in the Lara Lawsuit.  Docket No. 9 at 1, 6-7.  Second, BKV asserts a claim for breach of contract, alleging that EDT breached the MSC by failing to honor its contractual obligations for defense, indemnity, and additional insurance coverage.  *Id*. at 8.  EDT's third claim "seeks recovery of its attorneys' fees and litigation costs and expenses."  *Id*., ¶ 30.[5]

## II.     LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

---

[5] EDT's third claim does not appear to be a separate claim, but rather outlines some of EDT's requested relief.

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III.   ANALYSIS[6]

---

[6] As a preliminary matter, the Court notes that both parties failed to comply with this Court's Practice Standards on summary judgment motions. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i (providing that the movant must, in a section of its brief styled "Statement of Undisputed Material Facts," set forth "in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law"); *see id.*, § III.F.3.b.v. (providing that the non-movant must, in a section of its brief styled "Statement of Additional Disputed Facts," set forth "in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law"). Both parties cite

BKV moves for summary judgment on its declaratory judgment claim and breach of contract claim. Docket No. 40 at 11-18.[7] "Because declaratory judgment acts are procedural rules, 'federal law determines whether a district court may properly enter a declaratory judgment' in a diversity case." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1194 (D. Colo. 2018) (quoting *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. 2008)). The federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[T]he question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

To establish a claim for breach of contract under Colorado law,[8] a plaintiff must prove "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant;

---

evidence in their analysis sections that was not included in their statement of fact sections. *See* Docket No. 40 at 4 n.10, 13; Docket No. 41 at 11; Docket No. 42 at 7-9.

[7] BKV also cursorily states that it is entitled to summary judgment on its third claim, the attorneys' fees claim. Docket No. 40 at 18. Although BKV moves for summary judgment on this claim, BKV states that it "requests the right to establish its attorneys' fees, costs, and expenses for defending the underlying *Lara* lawsuit by separate motion to the Court after the Court's ruling on this Motion." *Id.* at 19. Accordingly, the Court declines to evaluate at this stage whether BKV is entitled to attorneys' fees.

[8] The parties agree that Colorado law applies to this claim. Docket No. 40 at 10, 18; Docket No. 41 at 9. The MSC contains a choice-of-law provision stating that the MSC and all causes of action arising from the contract are governed by the law of Colorado. Docket No. 40-1 at 18, ¶ 14.1. Accordingly, the Court will apply Colorado law to the breach of contract claim.

and (4) damages to the plaintiff." *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10 (D. Colo. Mar. 30, 2023); *see also W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases).

BKV argues that it is entitled to summary judgment on the declaratory judgment claim because the MSC is a valid contract, Section 4.1 provides that EDT must indemnify and defend BKV against any claims asserted by a member of the "Contractor Group," and Mr. Lara is "clearly a member of 'Contractor Group.'" Docket No. 40 at 11-13.[9] Furthermore, BKV asserts that it is entitled to summary judgment on the breach of contract claim because (1) the MSC is a valid and enforceable contract; (2) BKV performed its obligations under the MSC by requesting defense, indemnity, and additional insurance coverage from EDT; (3) EDT breached the MSC by failing to

---

[9] The Court notes that plaintiff failed to discuss the relevant declaratory judgment factors in its motion. *See* Docket No. 40 at 11-17. As the Court explained in the motion to dismiss order in this case, the Tenth Circuit has identified five factors ("*Mhoon* factors") a district court should consider in determining whether to exercise its discretion to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*BKV Barnett, LLC v. Elec. Drilling Techs., LLC*, No. 23-cv-00139-PAB-SBP, 2024 WL 809894, at *5 (D. Colo. Feb. 27, 2024) (quoting *Runyon*, 53 F.3d at 1169) (quoting *State Farm & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994))). BKV's failure to address the *Mhoon* factors in its motion would provide a sufficient reason alone for the Court to deny BKV's request for summary judgment on this claim. *See First Mercury Ins. Co. v. MRCO, Inc.*, 2013 WL 12170302, at *3 (D.N.M. Mar. 21, 2013) (noting that "the party invoking declaratory judgment jurisdiction . . . has the burden of showing that [the] Court should exercise declaratory judgment jurisdiction").

acknowledge its defense, indemnity, and insurance obligations; and (4) BKV has suffered damages, including legal fees and costs in the Lara Lawsuit. *Id*. at 18. In response to plaintiff's motion, EDT argues that Section 4.1 of the MSC is void under Colo. Rev. Stat. § 13-21-111.5(6) and therefore plaintiff's motion should be denied. Docket No. 41 at 9-12. The Court will first address the issue of whether the defense, indemnification, and insurance provisions of the MSC are void under Colo. Rev. Stat. § 13-21-111.5(6).

### A. Colo. Rev. Stat. § 13-21-111.5(6)

Colorado's Anti-Indemnification Statute provides that

> any provision in a construction agreement that requires a person to indemnify, insure, or defend in litigation another person against liability for damage arising out of death or bodily injury to persons or damage to property caused by the negligence or fault of the indemnitee or any third party under the control or supervision of the indemnitee is void as against public policy and unenforceable.

Colo. Rev. Stat. § 13-21-111.5(6)(b).[10] In adopting this statute, the Colorado General Assembly found that "[c]onstruction businesses in recent years have begun to use contract provisions to shift the financial responsibility for their negligence to others, thereby circumventing the intent of tort law." Colo. Rev. Stat. § 13-21-111.5(6)(a)(III); *see also Higby Crane Servs., LLC v. Nat'l Helium, LLC*, 703 F. App'x 687, 691 (10th Cir. 2017) (unpublished). The purpose of the Anti-Indemnification Statute is to "create an economic climate that will promote safety in construction, foster the availability and

---

[10] The parties agree that Colorado law applies to the MSC. Docket No. 40 at 10; Docket No. 41 at 9-11. The MSC contains a choice-of-law provision stating that the MSC and all causes of action arising from the contract are governed by the law of Colorado. Docket No. 40-1 at 18, ¶ 14.1. Accordingly, the Court finds that it is proper to evaluate whether the MSC's indemnification, defense, and insurance provisions are void under Colo. Rev. Stat. § 13-21-111.5(6)(b).

10

affordability of insurance, and ensure fairness among businesses." Colo. Rev. Stat. § 13-21-111.5(6)(a)(VI). The statute defines a "construction agreement" as

> a contract, subcontract, or agreement for materials or labor for the construction, alteration, renovation, repair, maintenance, design, planning, supervision, inspection, testing, or observation of any building, building site, structure, highway, street, roadway bridge, viaduct, water or sewer system, gas or other distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction.

Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).[11]

EDT argues that the MSC's indemnification provision is void because the "work performed under the MSC that gives rise to the allegations of the Lara Lawsuit involved the repair of a structure which is expressly defined as a construction contract under C.R.S. § 13-21-111.5(6)." Docket No. 41 at 2. EDT states that BKV alleges that it contracted with EDT to repair damage to electrical facilities that were struck by lightning. *Id*. at 9. EDT argues that the exhibits attached to BKV's summary judgment motion, including the March 2022 Invoice, demonstrate that EDT performed the following work: "Installation and Rig up services for utility power;" "Utility Pole installation;" "Delivery of cable trailers, drive-overs, and switches;" "Delivery of a crane to perform the work;" "Crew and machines to disconnect and roll up MV cable;" and "Transport of power supply from location to storage." *Id*. at 11 (citing Docket Nos. 40-5; 40-6). EDT cites *Higby* in support of its argument that the MSC is a construction agreement under Colo. Rev. Stat. § 13-21-111.5(6). *Id*. at 10-11 (citing *Higby Crane Servs.,* 703 F. App'x at 691-93).

---

[11] A "construction agreement" does not include any rental agreement between a landlord and tenant or any agreement that concerns property owned or operated by a railroad, sanitation district, or water district. Colo. Rev. Stat. §§ 13-21-111.5(6)(e)(II)(A)-(B).

In its reply, BKV argues that the MSC is not a construction agreement under Colorado law.  Docket No. 42 at 8.  BKV argues that the parties "contracted for EDT to provide electrical power to the site and [BKV's] drilling operations which was accomplished through EDT renting certain electrical equipment to BKV." *Id*. at 8-9. With no citation to the record, BKV contends that "[a]ny work, including installing or repairing damaged electrical equipment, was incidental to EDT's contractual obligations to provide electrical power to the site and its drilling operations.  As such, the sole purpose of BKV and EDT's contract was for EDT to provide electrical power to BKV's site and its drilling operations." *Id*. at 9.  BKV argues that a court in Pennsylvania has found that Colorado's Anti-Indemnification Statute is "inapplicable to work performed at an oil/gas well site." *Id*. (citing *Williams v. Inflection Energy, LLC*, 2016 WL 4429998 (M.D. Pa. Aug. 22, 2016)).[12]

It is undisputed that Section 4.1 of the MSC provides that EDT "AGREES TO INDEMNIFY, DEFEND, RELEASE, PROTECT AND SAVE HARMLESS <u>COMPANY GROUP</u> FROM AND AGAINST ANY AND ALL LOSSES, CAUSES OF ACTION, CLAIMS . . . MADE OR ASSERTED BY, OR ARISING IN FAVOR OF, ANY MEMBER OF <u>CONTRACTOR GROUP</u>."  Docket No. 40 at 6, ¶ 14.  The MSC provides that the parties must procure insurance policies that "extend to and protect the other respective Company Group or Contractor Group to the fullest extent." *Id*. at 4-5, 7, ¶¶ 13-14.  The MSC states that BKV may, "from time to time," request that EDT "perform certain work

---

[12] The *Williams* decision is not binding precedent on this Court.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted).

12

or furnish certain services to [BKV] as specified in verbal requests or written work orders. . . . All Work Orders executed by the Parties pursuant to this Contract are expressly made subject to the terms of this Contract." Docket No. 40-1 at 8, ¶ 1.1. Thus, EDT did not agree to perform any specific work for BKV in the MSC. *See id*.

It is undisputed that, in early 2022, a lightning strike damaged certain electrical facilities that provided electrical power at or near the Site. Docket No. 40 at 3, ¶ 6. EDT notified BKV of the power outage, and EDT agreed that it would dispatch a crew to rectify the issue. *Id*. at 4, ¶ 7. Neither party explains whether the agreement to repair the electrical facilities was a written work order or a verbal request under the MSC. However, it is undisputed that the March 2022 Invoice shows that EDT performed the following work in March 2022: (a) "install[ed]" a "Utility Pole," "overhead wires," "[a]bove ground cable," and "drive-overs;" (b) "set 2 pad mounted switches;" and (c) "repair[ed] overhead cable." Docket No. 40-5. EDT also provided a "Crane to Load and Unload standard load items." *Id*.

When the Court considered EDT's motion to dismiss, Docket No. 17, in an earlier order, the Court noted that it was not clear from the pleadings whether the agreement for EDT to perform work at the Site fell within the definition of a "construction agreement" under the Anti-Indemnification Statute. *BKV Barnett*, 2024 WL 809894, at *5. However, the parties have now submitted undisputed evidence that answers this question. The Court finds that the parties' agreement for EDT to perform work in March 2022 is a "construction agreement" under the Anti-Indemnification Statute because the agreement involved "materials or labor for the construction, alteration, renovation, [or] repair . . . of any . . . structure." *See* Colo. Rev. Stat. § 13-21-111.5(6)(e)(I). EDT

13

installed a "Utility Pole" at the Site.  Docket No. 40-5.  A utility pole constitutes "materials" and when installed constitutes a "structure."  EDT also repaired "overhead cable," *see id.*, which constitutes the "repair" of a "structure."  Because EDT's work involved the construction and repair of a structure, the Court finds that the parties' agreement is a "construction agreement" under Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).  *See Higby Crane Servs.*, 703 F. App'x at 693 (finding, at the summary judgment stage, that a work order issued pursuant to a master services contract constituted a "construction agreement" under Colo. Rev. Stat. § 13-21-111.5(6)(e)(I) because it was undisputed that the work order showed that appellant "[p]ulled off end caps to plug tubes on heat exchangers" at "a gas processing plant"); *Cont'l Ins. Co. v. Cintas Corp. No. 2*, No. 18-cv-00254-RBJ, 2019 WL 4643711, at *5-6 (D. Colo. July 12, 2019) (holding that a contract was a "construction agreement" under section 13-21-111.5(6)(e)(I) because the defendant repaired a "dry pipe system" in a building, and thus, the indemnification provision in the contract was void).[13]

As a result, the Court finds that the defense, indemnification, and insurance provisions of the MSC are void under the Anti-Indemnification Statute.  *See* Colo. Rev.

---

[13] The Court rejects BKV's argument that the agreement is not a construction agreement because EDT's work in March 2022 was "incidental to EDT's contractual obligations to provide electrical power to the site."  *See* Docket No. 42 at 9.  The statute does not state that "incidental" construction work is excluded from the definition of a construction agreement, *see* Colo. Rev. Stat. § 13-21-111.5(6)(e)(II), and BKV cites no cases in support of an implicit exclusion.  Moreover, the MSC states that BKV may, "from time to time," request that EDT "perform certain work or furnish certain services to [BKV] as specified in verbal requests or written work orders. . . .  All Work Orders executed by the Parties pursuant to this Contract are expressly made subject to the terms of this Contract."  Docket No. 40-1 at 8, ¶ 1.1.  In *Higby*, the Tenth Circuit found that a work order issued pursuant to a master services contract can constitute a "construction agreement" under Colo. Rev. Stat. § 13-21-111.5(6)(e)(I).  *See Higby Crane Servs.*, 703 F. App'x at 693.

Stat. § 13-21-111.5(6)(b) ("any provision in a construction agreement that requires a person to *indemnify, insure, or defend* in litigation another person against liability for damage arising out of death or bodily injury to persons . . . caused by the negligence or fault of the indemnitee . . . is void as against public policy and unenforceable") (emphasis added).

In its motion, BKV requests that the Court enter summary judgment in its favor on the declaratory judgment claim and declare that

> the MSC contains (a) valid, enforceable defense provisions requiring EDT to defend BKV and all members of Company Group from all claims asserted by Lara in the *Lara* lawsuit; (b) valid, enforceable indemnity provisions requiring EDT to indemnify BKV and all members of Company Group from all claims asserted by Lara in the *Lara* lawsuit; and (c) valid, enforceable insurance provisions requiring EDT's insurer(s) to grant BKV and all members of Company Group additional insured status on a primary basis relating to the claims asserted by Lara in the *Lara* lawsuit.

Docket No. 40 at 15. Regarding the breach of contract claim, BKV contends that it is entitled to summary judgment on this claim because EDT breached the MSC by failing to acknowledge its defense, indemnity, and insurance obligations. *Id*. at 18. Because the defense, indemnification, and insurance provisions of the MSC are void under Colo. Rev. Stat. § 13-21-111.5(6)(b), the Court denies BKV's request for summary judgment on the declaratory judgment and breach of contract claims.

### B. Fed. R. Civ. P. 56(f)

EDT has not filed a motion for summary judgment. However, Federal Rule of Civil Procedure 56(f)(1) provides that the Court may "grant summary judgment for a nonmovant" after "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); *see also Arlin Geophysical v. United States*, 696 F. App'x 362, 368 (10th Cir. 2017) (unpublished). "Rule 56(f) exists largely for efficiency reasons, to save courts

from proceeding with trials that are plainly unnecessary." *Doe v. Intermountain Healthcare, Inc.*, 2023 WL 5395526, at *30 (D. Utah Aug. 22, 2023). Given the Court's ruling that the defense, indemnification, and insurance provisions in the MSC are void under Colo. Rev. Stat. § 13-21-111.5(6)(b), it is ordered that plaintiff shall show cause, on or before October 28, 2024, why summary judgment should not enter in favor of defendant on plaintiff's claims. Failure to file a response by the deadline will result in the Court granting summary judgment to defendant and closing this case without further notice to the parties.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff BKV Barnett, LLC's Motion for Summary Judgment [Docket No. 40] is **DENIED**. It is further

**ORDERED** that, on or before **October 28, 2024**, plaintiff shall show cause why summary judgment should not enter in favor of defendant in this case.

DATED September 26, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge